IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION


WARREN G. MORRIS and DEBRA L.      *
MORRIS,
                                   *
        Plaintiffs,
                                   *
vs.
                                   *      CASE NO. 3:05-CV-10 (CDL)
PROGRESSIVE HEALTH
REHABILITATION LLC, KEITH          *
BERSCH, JIM KING, PATRICK
STAPLES and THE MORRIS CENTER      *
FOR SPORTS MEDICINE, INC.,[1]
                                   *
        Defendants.
                                   *
_____

O R D E R

Presently pending before the Court are Defendants' motions for summary judgment [Docs. 45 & 46] and Defendants' Motion to Strike [Doc. 62]. For the reasons stated below, the Court grants in part and denies in part Defendants' motions for summary judgment [Docs. 45 & 46] and denies Defendants' Motion to Strike [Doc. 62].

BACKGROUND

This age discrimination case arises from the termination of Plaintiffs' employment by Progressive Health Rehabilitation LLC ("Progressive"). At the time of their terminations, Debra Morris was a 54-year-old female, and Warren Morris was a 72-year-old male. They contend that Progressive terminated them because of their ages; that

---

[1]The Court recognizes that Plaintiffs bring this action against two corporate entities: Progressive Health Rehabilitation LLC and The Morris Center for Sports Medicine, Inc. However, because Progressive Health Rehabilitation LLC acquired The Morris Center for Sports Medicine, Inc., the Court will refer to both corporate entities throughout this Order as Progressive Health Rehabilitation LLC.

Progressive breached several contracts; and that Progressive fraudulently induced them to enter into those contracts.[2]  Construed in the light most favorable to Plaintiffs, the record establishes the following facts.[3]

Plaintiffs, who are married to each other, founded and operated The Morris Center for Sports Medicine, Inc. ("The Morris Center"), which included three clinics located in Athens, Watkinsville, and Winder, Georgia.  Mrs. Morris, a lawyer and an athletic trainer, concentrated on the management side of the business.  Mr. Morris, also an athletic trainer, treated patients.  Progressive operated similar sports medicine facilities in Indiana and Kentucky.  Wishing to expand its business, Progressive contacted Plaintiffs to inquire about purchasing The Morris Center.

In May 2003, the parties met to negotiate a deal.  After lengthy negotiations, the parties mutually agreed to Progressive's acquisition of The Morris Center.  The essential terms of the sale were outlined by the parties in a letter of intent.  Among other things, the parties agreed that after the sale, Plaintiffs would continue to be involved in the business as Progressive's employees, and they would be entitled to a percentage of the profits.  The parties planned to eventually grow the business to include more clinics in nearby areas.

---

[2]Plaintiffs have dismissed their age discrimination and breach of contract claims against the individual Defendants, and therefore, the only claims pending against the individual Defendants are for fraud and negligent misrepresentation.

[3]For summary judgment purposes, the court views the facts in the light most favorable to the non-moving party and draws all favorable inferences in favor of that party. See Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 918, 918-19 (11th Cir. 1993)

After successfully completing their due diligence reviews, the parties met on August 1, 2003 at the office of Plaintiffs' attorney to close the deal. At the closing, the parties memorialized all aspects of their arrangement in a number of definitive agreements, including a stock purchase agreement and employment agreements for each Plaintiff.

The stock purchase agreement, in relevant part, specified Plaintiffs' right to a certain percentage of the net income. According to the agreement, Plaintiffs would receive ten percent of the net income of The Morris Center clinics and of any clinics subsequently opened by Progressive based on contacts supplied by Plaintiffs through July 31, 2006, so long as at least one of the Plaintiffs remained employed by Progressive through August 1, 2004. The right to ten percent of the net income would continue after July 31, 2006 only if at least one of them remained employed by Progressive after that date, and only for as long as he or she remained employed.

The employment agreements specified the terms and conditions of Plaintiffs' employment with Progressive. Because Mrs. Morris had a law degree and experience in operating The Morris Center clinics, she became Progressive's vice president of administration and general counsel. Her duties were clearly outlined in her employment agreement. In short, Progressive expected Mrs. Morris to be its in-house counsel and its compliance coordinator; she was compensated at the rate of $50,000 per year plus benefits.

Mr. Morris became Progressive's Regional Manager. His responsibilities included: supervising The Morris Center staff, establishing budgets, monitoring the clinics' productivity and

financial performance, developing marketing plans, as well as treating patients. Progressive agreed to compensate Mr. Morris at the rate of $100,000 per year plus benefits. Notably, each Plaintiff's employment agreement contemplated the terms of Plaintiffs' terminations and required that any modification to the agreements be in writing.

After the acquisition, Progressive assumed operational control of The Morris Center. Although Mrs. Morris was handling minor compliance issues prior to the acquisition, her post-acquisition workload significantly increased as she became responsible for the entire organization. This increase required Mrs. Morris to research a myriad of compliance statutes to make sure that the new business was in compliance with each of them; she had to learn to rely on email as a form of communication; and she also had to adjust to the leadership styles of the new management.

From the outset of Mrs. Morris's employment with Progressive, she did not meet Progressive's expectations. In Progressive's view, she took too long to complete assignments, her completed assignments were not done to its satisfaction, and she was often curt in her communication.

Progressive also became dissatisfied with Mr. Morris's performance. While Mr. Morris was under the impression that he was no longer required to see patients, Progressive held a contrary expectation. Mr. Morris's minimal patient billing, which only included billing for seven patients in October, nine in November, four in December, and none at all thereafter, was unsatisfactory to Progressive. A review by Progressive's chief operating officer ("COO") found that Mr. Morris was inefficient in allocating his time.

(W. Morris Dep., Exs. 46 & 47)  Progressive's dissatisfaction was also based on Mr. Morris's failure to provide his employees with an annual performance review, his disrespect to management, and his lack of computer skills.

On March 8, 2004, Progressive's chief executive officer ("CEO"), Mr. Bersch, met with Plaintiffs at the office of Plaintiffs' attorney to discuss their continued employment with Progressive.  At the time of this meeting, Mrs. Morris was 54 years old and Mr. Morris was 72 years old.  During the meeting, Mr. Bersch allegedly announced that Progressive was a company of young people, that Plaintiffs did not fit in, and that one or both of them needed to resign or be fired. Then, Mr. Bersch proposed a solution.  For the sake of clarity, the Court will address the proposals and subsequent events as they relate to each Plaintiff separately.

*a. Mrs. Morris*

As to Mrs. Morris, Mr. Bersch proposed that she resign effective March 31, 2004, and accept severance pay equaling her pay and benefits through July 31, 2004.  The offered terms were not satisfactory to Mrs. Morris, so she refused the offer.  She did, however, agree to consider more lucrative severance offers.

After the meeting, she continued to work for Progressive.[4]  In return, she received her monthly salary and benefits through July 31, 2004.  She received no additional compensation after that date, and

---

[4]Progressive claims Mrs. Morris stopped working immediately after the March meeting.  The record supports both contentions.  Progressive allowed Mrs. Morris to perform some of the work at home.  As such, although Progressive did not see any completed work product from Mrs. Morris after the meeting, genuine issues of material fact exist as to whether she continued to work on the outstanding projects without Progressive's knowledge.

on August 9, 2004, she called Progressive to ask why.  To her alleged surprise, Progressive's human resources officer informed her that she had resigned effective March 31, 2004, and that her severance payments expired July 31, 2004.

While Mrs. Morris adamantly denies that she agreed to resign effective March 31, 2004, Progressive insists otherwise.  Mr. Bersch claims that Mrs. Morris agreed to the proposed resignation.  In turn, he agreed to reduce the agreement to writing after the March meeting and forward it to Mrs. Morris's attorney for review.  In fact, Mr. Bersch did just that.  He put together an Employment Severance and Release Agreement ("Release Agreement") specifying the terms of Mrs. Morris's release and forwarded it to her attorney.  The attorney, however, convinced that Mrs. Morris would not agree to the terms contained in the proposed Release Agreement, failed to forward the agreement to Mrs. Morris.  No signed document exists modifying the original employment agreement between Mrs. Morris and Progressive.

One day after the March meeting, Progressive, believing that Mrs. Morris resigned, processed her termination paperwork, to be effective March 31, 2004.  On that same day, Progressive reassigned some of Mrs. Morris's duties to an existing employee.  Progressive has not, to date, filled the position vacated by Mrs. Morris.

On October 27, 2004, sixty-eight days after she learned of her termination from Progressive's human resources officer, Mrs. Morris filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging that on March 31, 2004 Progressive terminated her because of her age in violation of the Age Discrimination in

Employment Act ("ADEA").  After receiving her Notice of Right to Sue on January 24, 2005, Mrs. Morris initiated this action.

   *b.  Mr. Morris*

   As to Mr. Morris, Mr. Bersch proposed that Mr. Morris stay with Progressive, but move into a non-supervisory regional consultant position.  Much like Mrs. Morris, Mr. Morris allegedly refused the offer, but he also agreed to consider more lucrative offers at a later time.  Progressive, on the other hand, understood that Mr. Morris had accepted the terms of its proposal and, one day after the meeting, informed its employees that Mr. Morris no longer had managerial responsibilities.

   Although Mr. Morris never signed an agreement amending his employment agreement,[5] his work duties after March 8 were arguably more consistent with a regional consultant position than a regional manager position: he did not prepare or submit any budget information or employee performance reviews; he no longer participated in managers' meetings; and he did not participate in a Medicare audit, although he concedes that responding to the audit was the regional manager's responsibility.  Instead, Mr. Morris sorted the mail, filled in for the receptionist, couriered papers to doctors' offices and between clinics, assisted a physical therapist with a few patients, and provided some services to Oconee County High School once football practice started.

---

   [5]At the end of the March meeting, Mr. Bersch promised to memorialize the agreed-upon terms of Mr. Morris's continued employment with Progressive and submit it to Mr. Morris's attorney for review.  Although Mr. Bersch provided the "agreement" to Mr. Morris's attorney, Mr. Morris's attorney never gave the proposed agreement to Mr. Morris.  Therefore, no signed document exists modifying the original employment agreement between Mr. Morris and Progressive.

Shortly after Mrs. Morris complained to Progressive about its failure to pay her compensation, Mr. Morris attempted to reassert his managerial authority at the clinics. Finding such behavior disruptive to the workplace, Progressive, on August 18, 2004, issued a "Formal Written Warning for Warren Morris," reciting a litany of shortcomings in Mr. Morris's performance as the regional consultant. (W. Morris Dep., Ex. 59) Mr. Morris, through his attorney, responded by reminding Progressive that he was a regional manager, not a consultant, and that there was no signed employment agreement amending his previous employment agreement. In response, on September 1, 2004, Progressive's counsel informed Mr. Morris's counsel that Progressive terminated his employment, effective September 8, 2004.

On October 27, 2004, Mr. Morris, together with Mrs. Morris, filed a charge with the EEOC alleging age discrimination. After receiving his Notice of Right to Sue on January 24, 2005, Mr. Morris initiated this action.

DISCUSSION

Plaintiffs assert federal law claims for age discrimination and state law claims for breach of contract, fraud, and negligent misrepresentation. Defendants seek summary judgment as to each of Plaintiffs' claims. For the following reasons, the Court denies Defendants' motion as to Plaintiffs' federal age discrimination claims, and the Court grants in part and denies in part Defendants' motion as to Plaintiffs' state law claims.

## I.    Summary Judgment Standard

Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A genuine issue of material fact necessary to defeat a properly supported motion for summary judgment arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In reviewing a motion for summary judgment, a court must review all the evidence in the record while "draw[ing] all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); see also Maynard v. Williams, 72 F.3d 848, 851 (11th Cir. 1996).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and entitle it to a judgment as a matter of law.  Celotex Corp., 477 U.S. at 323 (internal quotation marks omitted).  If the moving party discharges this burden, the burden shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact (i.e., evidence that would support a jury verdict) or

that the moving party is not entitled to a judgment as a matter of law. <u>See</u> Fed. R. Civ. P. 56(e); <u>Celotex Corp.</u>, 477 U.S. at 324-26. This evidence must consist of more than mere conclusory allegations or legal conclusions. <u>See</u> <u>Avirgan v. Hull</u>, 932 F.2d 1572, 1577 (11th Cir. 1991). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp.</u>, 477 U.S. at 322.

## II. Motions to Strike

In opposition to Defendants' Motion for Summary Judgment, Plaintiffs' rely in part upon their affidavits and certain documents labeled as exhibits "A" through "G." Defendants object to paragraph 12 of Mrs. Morris's affidavit and paragraph 14 of Mr. Morris's affidavit, contending that they are inconsistent with previous deposition testimony given by the parties and should therefore be stricken and not considered by the Court. Defendants also seek to strike exhibits "A" through "G" because they are "unauthenticated" documents.

In their affidavits, Plaintiffs use the word "old" to describe what Mr. Bersch allegedly said to them at the March meeting. According to the affidavits, "[Plaintiffs] [were] shocked and stunned when, at the Meeting, Mr. Bersch told [Mrs. Morris] and [Mr. Morris] that [they] were old and did not fit into the company . . . ." (D. Morris Aff. ¶ 12; W. Morris Aff. ¶ 14.) Neither Plaintiff, however, used the word "old" in their earlier deposition testimony regarding the same comments. (<u>See</u> D. Morris Dep. 95:23-96:21, W. Morris Dep. 125:12-125:18.)

Progressive argues that by using the word "old" in their affidavits, Plaintiffs have contradicted their earlier deposition testimony. This Court rejects Progressive's contention that the affidavit testimony should therefore be disregarded. Before disregarding an affidavit, the law requires "a court to find some inherent inconsistency between an affidavit and a deposition." Rollins v. TechSouth, Inc., 833 F.2d 1525, 1530 (11th Cir. 1987) (citing Van T. Junkins & Assocs. v. U.S. Indus., Inc., 736 F.2d 656, 658-659 (11th Cir. 1984)). The two statements at issue in this case are far from inconsistent. Both statements convey the same idea—communication by Mr. Bersch indicating his perception that Plaintiffs' ages were not a good fit for the company. The inconsistency lies in the form of the expression, not in its substance: the deposition testimony is Plaintiffs' stated recollections of Mr. Bersch's actual comments, whereas the affidavit testimony is a paraphrased summary of Plaintiffs' interpretation of those comments. The Court finds that the affidavit statements are not sufficiently contradictory to the deposition testimony to be disregarded. Accordingly, the Court denies Progressive's motion to strike paragraph 12 of Mrs. Morris's Affidavit and paragraph 14 of Mr. Morris's Affidavit.

As to Defendant's motion to strike Exhibits "A" through "G," the Court does not rely upon those exhibits in reaching its decision on Defendants' Motion for Summary Judgment. Therefore, Defendants' motion to strike those exhibits is denied as moot.

**III. Summary Judgment Motion**

    *A.  The ADEA Claims*

        1. Mrs. Morris

           *a.  Timeliness of the Claim*

As an initial matter, Progressive argues that Mrs. Morris's ADEA claim is time-barred. The ADEA requires an individual to file a charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the "unlawful practice." 29 U.S.C. § 626(d)(1). The 180-day period "begins running from the date the employee knows or reasonably should know that he or she has been discriminated against." Hill v. Metro. Atlanta Rapid Transit Auth., 841 F.2d 1533, 1545 (11th Cir. 1988) (citing Stafford v. Muscogee County Bd. of Educ., 688 F.2d 1383, 1387 (11th Cir. 1982)).

Mrs. Morris filed her charge with the EEOC on October 27, 2004. Therefore, her claim under the ADEA is barred only if she knew or reasonably should have known of Progressive's "unlawful practice" prior to May 1, 2004. The parties do not dispute that Mrs. Morris's termination of employment is the "unlawful practice" in question. Thus, the issue for the Court is when Mrs. Morris knew or reasonably should have known of the termination. Mrs. Morris claims that she did not learn of the termination until August 9, 2004, when Progressive's human resources officer informed Mrs. Morris that her employment ended on March 31, 2004. Based upon Mrs. Morris's version of the facts, she filed her EEOC charge sixty-eight days after she learned of the unlawful employment practice, well within the 180 days allowed by the ADEA.

Evidence does exist in the record disputing Mrs. Morris's version of when she first learned of the termination. Progressive

12

argues that Mrs. Morris should have known of her termination on March 8, 2004, when Mr. Bersch allegedly made it clear that her employment with Progressive was at an end. At this stage of the proceedings, genuine issues of material fact exist as to when Plaintiff knew or should have known of her termination. Accordingly, summary judgment is not appropriate as to Defendant's defense that Mrs. Morris did not file a timely ADEA claim. See Williams v. Borden, 637 F.2d 731, 738 (11th Cir. 1980) (Questions of knowledge and judgment should not generally be decided as a matter of law if there is any doubt as to the inferences to be drawn from the underlying facts.).

### b. Merits of Mrs. Morris's ADEA Claims

The Age Discrimination in Employment Act ("ADEA") prohibits the "discharge [of] any individual . . . because of . . . age." 42 U.S.C.A. §623(a)(1). Claims of employment discrimination brought under the ADEA may be established by one of two ways: through the introduction of direct evidence of discrimination or through circumstantial evidence that creates an inference of discrimination. Wright v. Southland Corp., 187 F.3d 1287, 1293 (11th Cir. 1999). To evaluate claims based on circumstantial evidence, the courts use the familiar burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). However, where a plaintiff produces "direct evidence of discrimination," it is unnecessary to rely on the McDonnell Douglas analysis. Wright, 187 F.3d at 1293; see also Dybczak v. Tuskegee Inst., 737 F.2d 1524, 1528 (11th Cir. 1984); Lindsay v. American Cast Iron Pipe Co., 772 F.2d 799, 801-02 (11th Cir. 1985). If the plaintiff presents direct evidence of discrimination that, if believed by the jury, would be sufficient to

13

win at trial, summary judgment is not appropriate, even where the employer presents conflicting evidence. Id. (citing Taylor v. Runyon, 175 F.3d 861, 867 n.2 (11th Cir. 1999)).

In this case, Mrs. Morris contends that the comments made by Mr. Bersch at the March meeting constitute direct evidence of age discrimination. According to Mrs. Morris, during the course of the meeting, Mr. Bersch, an undisputed decisionmaker, stated that Mrs. Morris and her husband "didn't fit in with this company, with the company culture, and that all the young people that were there were faster on the internet, faster with computers, and that [Progressive] was made up of younger people and that [Plaintiffs] didn't fit in." (D. Morris Dep. 95:23-96:21.) Mr. Morris, who was also present at the meeting, recalls Mr. Bersch saying that "one of us had to go, that we did not fit into this company, they were a young group and that we did not fit into this." (W. Morris Dep. 125:12-125:17.) Mr. Bersch denies making these comments. ("I never said that 'Progressive was a system of younger people and that the company was made up [of] young people who spent all their time on the internet and are fast on computers,' or any words to that effect.") (Bersch Aff. ¶ 9.)

The decisionmaker's alleged comments in this case, if accepted as true, which the Court must so accept at this stage of the proceedings, are direct evidence of discrimination based upon age. A reasonable jury, which accepts Plaintiffs' version of the comments, could conclude that the decisionmaker placed significant reliance upon age in deciding to terminate Plaintiffs' employment. Genuine issues of material fact exist to be tried. Accordingly, Defendants'

Motion for Summary Judgment is denied as to Mrs. Morris's age discrimination claim.

       2. Mr. Morris's Claim

The facts relevant to Mr. Morris's ADEA claim are nearly identical to the facts relevant to Mrs. Morris's claim. The only possibly relevant distinction between the claims of Mr. and Mrs. Morris is the temporal difference between the alleged comments and the effective termination. As to Mrs. Morris, the comments were made a few *days* before the effective termination date. As to Mr. Morris, however, the comments were made a few *months* before his effective termination date. Nevertheless, even with the longer temporal difference, a reasonable jury could find that Mr. Bersch's comments constituted direct evidence of age discrimination as to Mr. Morris. Therefore, summary judgment is not appropriate as to Mr. Morris's ADEA claim, and Defendants' motion is accordingly denied.

    *B. Breach of Contract Claims*

       1. Employment Agreements

          *a. Mrs. Morris*

Mrs. Morris contends that her termination breached her employment agreement because it was "not conducted in the manner required by the [agreement]." (Compl. ¶ 55.) Progressive responds that the agreement entitled it to terminate Mrs. Morris.

     The agreement established the grounds and procedures governing Mrs. Morris's termination. According to the agreement, Progressive may terminate Mrs. Morris at any time for "Due Cause," defined as "the Company's reasonable dissatisfaction with the quality of [Mrs. Morris's] performance, unreasonable refusal by [Mrs. Morris] to

15

perform her duties, or material failures by [Mrs. Morris] to perform her duties." (W. Morris Dep., Ex. 6, 1.) The Court finds that genuine issues of material fact exist as to whether Defendant breached Mrs. Morris's employment agreement by terminating her without "due cause." Accordingly, Defendants' Motion for Summary Judgment as to Mrs. Morris's breach of contract claim is denied.

### b. Mr. Morris

Mr. Morris similarly claims that Progressive breached his employment agreement when it terminated his employment. The provision contained in Mr. Morris's employment agreement is identical to the one contained in Mrs. Morris's employment agreement.[6] While evidence exists supporting a finding of "due cause" for Progressive's termination of Mr. Morris, evidence also exists from which a jury could conclude otherwise. Accordingly, since genuine issues of material fact exist to be tried, Defendants' Motion for Summary Judgment is denied as to Mr. Morris's breach of contract claim.

### 2. Other Written Agreements

Plaintiffs also claim that Progressive breached certain provisions in other written contracts, including promises related to the payment of vehicle allowances, continuing education, vacation days, and a percentage of the profits. Although Plaintiffs have not responded to Progressive's Motion for Summary Judgment on these

---

[6]Mr. Morris's employment agreement provides that: "Morris agrees that his employment is subject to termination by the Company at any time with Due Cause. For purposes of this section "Due Cause" shall be defined as a good faith finding by the Company of the following: gross negligence or material dishonesty; additionally, the following, if not cured within 30 days written notice, shall also be considered due cause, Company's reasonable dissatisfaction with the quality of Morris'[s] performance, unreasonable refusal by Morris to perform his duties, or material failure by Morris to perform his duties." (W. Morris Dep., Ex.6, 1 ¶ 1.)

claims, the Eleventh Circuit makes it clear that a "district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather must consider the merits of the motion." United States v. 5800 SW 74th Ave., Miami, Fla., 363 F.3d 1099, 1101 (11th Cir. 2004) (citing Dunlap v. Transamerica Occidental Life Ins. Co., 858 F.2d 629, 632 (11th Cir. 1988) (per curiam)). A district court "must ensure that the motion itself is supported by evidentiary materials" and, at a minimum, "must review all of the evidentiary materials submitted in support of the motion for summary judgment." Id. at 1101-02. The Court will address each of Plaintiffs' claims in turn.

> a. *Vehicle Allowance*

> > (i)  Mrs. Morris

Mrs. Morris claims that Progressive failed to pay her vehicle allowance, in breach of the stock purchase agreement which provides that Progressive will pay Mrs. Morris $400.00 per month as an "auto allowance." (D. Morris Dep., Ex. 3, 4 ¶ 8.) The payment of such allowance is, however, expressly conditioned on Mrs. Morris's continued employment with Progressive. (Id.) ("[S]ince a significant amount of local travel is expected of both Warren Morris and Debra Morris, an auto allowance of four hundred dollars per month shall be paid to each *so long as each is employed by [Progressive].*") (Emphasis added.) In her deposition, Mrs. Morris admits that she received the vehicle allowance throughout her employment with Progressive. (D. Morris Dep. 26:15-26:24.) Moreover, she received the requisite vehicle allowance for 120 days after her employment with Progressive ended as part of her severance benefits. Progressive, therefore, did not breach the "vehicle allowance"

17

provision of the stock purchase agreement. As such, the Court grants summary judgment on this portion of Mrs. Morris's breach of contract claim.

### ii. Mr. Morris

Mr. Morris similarly claims that Progressive failed to pay his vehicle allowance, in breach of the same stock purchase agreement provision. Progressive notified Mr. Morris of his termination on September 1, 2004, but his termination did not become effective until September 8, 2004. Mr. Morris admits receiving a vehicle allowance through August 31, 2004. Mr. Morris is, therefore, still entitled to his vehicle allowance for the first eight days in September. As such, the Court denies summary judgment on this portion of Mr. Morris's breach of contract claim.

### b. Continuing Education Benefits

### i. Mrs. Morris

As an employee of Progressive, Mrs. Morris was entitled to continuing education benefits, so long as the continuing education was related to her position at the company. In 2004, Mrs. Morris requested, but was denied, continuing education benefits to attend the National Athletic Trainers' Association ("NATA") meeting. She now claims that Progressive's denial constitutes a breach of contract. (D. Morris Dep. 39:9-40:11.) The Court disagrees.

The NATA meeting was unrelated to her job as the vice president of administration and general counsel. The meeting, at best, related to Mrs. Morris's education as an athletic trainer. In fact, Mrs. Morris cannot remember a single instance when Progressive refused to grant her request to attend legal education courses.

Therefore, the Court grants summary judgment on this portion of Mrs. Morris's breach of contract claim.

### ii.  Mr. Morris

Mr. Morris also claims that Progressive failed to provide him with continuing education benefits.  The record, however, lacks any support for Mr. Morris's claim.  While he was employed, Progressive paid for his Georgia athletic trainer's license, paid for him to attend both the Georgia and NATA meetings, and paid his NATA membership dues.  Therefore, the Court grants summary judgment on this portion of Mr. Morris's breach of contract claim.

### c.  Paid Vacation

Plaintiffs claim that Progressive also deprived them of their vacation benefits.  The record is devoid of any evidence to substantiate their claims.  None of the written agreements between the parties address Plaintiffs' entitlement to vacation benefits. Therefore, the Court grants summary judgment on this portion of Mr. and Mrs. Morris's breach of contract claims.

### d.  Profit-Sharing Bonuses

Plaintiffs next contend that Progressive failed to pay percentage bonuses as required by the stock purchase agreement and failed to furnish audited financial records.  There is, however, a complete absence of evidence in the record to support these claims. Plaintiffs admit that they received income statements for the clinics, and they admit receiving checks for their share of the net income.  (D. Morris Dep. 23:5-25:7; W. Morris Dep. 14:17-15:10.) Plaintiffs further admit that they do not know how much, if any, net income compensation Progressive owes them.  (Id.)  Plaintiffs are also not aware of any financial information requested by them that

19

Progressive did not provide.  (Id.)  Therefore, the Court grants summary judgment on this portion of Plaintiffs' breach of contract claims.

### 3. Oral Agreements

Plaintiffs also contend that, contemporaneous with closing, Progressive orally promised to pay their insurance premiums and file storage fees ["Oral Agreements"], but subsequently breached the promises by failing to meet those obligations.  The Court, however, agrees with Progressive that the merger clauses contained in their respective employment agreements bar Plaintiffs' reliance upon the oral representations.

Progressive bases its argument on the parol evidence rule. Generally, when parties reduce their agreement to writing which they intend to be a complete contract regarding the subjects covered by it, the parol evidence rule prohibits oral representations to add to, to take from, or to vary the written contract.  See, e.g., Teel v. Trust Co. Bank, 455 S.E.2d 312, 314 (Ga. Ct. App. 1995).  Here, the sophisticated[7] parties clearly intended the employment agreements to be a complete contract as evidenced by the inclusion of the following merger clause in both employment agreements:  "[The Employment] Agreement . . . contains the full and complete understanding of the parties hereto with regard to the subject matter contained herein."[8]

---

[7]At the time the parties entered into the agreement, Mrs. Morris was a licensed attorney, and she and Mr. Morris were both represented by an independent attorney.

[8]Plaintiffs' reliance on Henry v. Blankenship, 621 S.E.2d 601 (Ga. Ct. App. 2005) to support her position that the parol evidence rule does not bar the introduction of the oral agreements in this case is misplaced because the court's decision in Henry was specifically premised on the absence of a merger clause in the parties' contract.

(D. Morris Dep., Ex. 6, 3 ¶ 10; W. Morris Dep., Ex. 6, 3 ¶ 10 .)  In other words, if the agreements cover the subject matter of the oral promises, and the oral promises contradict the terms of the written contract, then the parol evidence rule bars introduction of the oral promises.  See Teel, 455 S.E.2d at 314.

The agreements clearly cover the subject matter of the oral promises.  Both of the oral promises—the payment of the insurance premiums and the payment of the file storage fees—relate to the benefits of Plaintiffs' employment.  Plaintiffs' benefits are specifically addressed in their agreements, in a paragraph titled "Fringe Benefits."  (D. Morris Dep., Ex. 6, 2 ¶ 5; W. Morris Dep., Ex. 6, 2 ¶ 5.)  The Court also finds that the oral promises contradict the terms of the written contracts.  The employment agreements state that Progressive "shall provide [Plaintiffs] with the benefits provided to other full-time employees."  (Id.)  Because no other full-time employee of Progressive received reimbursements for insurance premiums or file storage fees, the written terms of the agreements implicitly preclude Plaintiffs from receiving them as well.  Thus, Plaintiffs' claims based upon alleged oral promises are barred by the parol evidence rule.  The Court, therefore, grants summary judgment on this portion of Plaintiffs' breach of contract claim.

C.   *Fraud and Negligent Misrepresentation*

Finally, Plaintiffs assert that Progressive and the individual Defendants induced them to sell their business by fraudulently promising, during the "pre-sale negotiations," to expand, grow, and open other clinics, from which Plaintiffs would derive additional financial benefits, and by promising to indefinitely employ both

Plaintiffs. Defendants' real motive, according to Plaintiffs, was to purchase the business at a lower price, lock Plaintiffs in with non-compete agreements, and then terminate both of them.

Generally, a party claiming that he was fraudulently induced to enter into a contract has two possible remedies. He can either promptly rescind the contract after discovering the fraud and sue in tort for recovery of the contract's consideration, or affirm the contract and sue for damages resulting from the fraud. See, e.g., <u>Lakeside Invs. Group, Inc. v. Allen.</u>, 559 S.E.2d 491, 494 (Ga. Ct. App. 2002). However, if the party chooses to affirm the contract, as Plaintiffs have done in this case,[9] then the party is bound by the terms of the contract, including the merger clause. <u>Id.</u>

Merger clauses operate as disclaimers, and establish that the written agreement completely and comprehensively represents the arrangement between the parties. <u>See</u> <u>WirelessMD, Inc. v. Healthcare.com Corp.</u>, 610 S.E.2d 352, 359 (Ga. Ct. App. 2005). If the contract contains a merger clause, a party cannot argue that it relied upon representations other than those contained in the contract. <u>Id.</u> Because the stock purchase agreement and the employment agreements contain valid merger clauses,[10] Plaintiffs may

---

[9]Plaintiffs' Complaint does not seek rescission of their contracts. As such, the Court concludes that Plaintiffs have elected to affirm the contract and sue for damages resulting from the alleged fraud.

[10]The stock purchase agreement provides that "[t]his Agreement and the Related Agreements set forth the entire agreement and understanding of the parties hereto and supercede any and all prior agreements, arrangements and understandings among the parties." (D. Morris Dep., Ex. 3, 14 ¶ 7.) Similarly, the employment agreements provide that "[t]his Agreement, together with the Stock Purchase Agreement . . . contains the full and complete understanding of the parties hereto with regard to the subject matter contained herein." (D. Morris Dep., Ex. 6, 3 ¶ 10; W. Morris Dep., Ex. 6, 3 ¶ 10.)

succeed on their fraud and negligent misrepresentation claims only if Defendants falsely promised in the written contracts to expand the company and indefinitely employ Plaintiffs.

The written agreements lack any promises on the part of Defendants that they would grow the business and/or indefinitely employ either Plaintiff.  In fact, the written contracts specifically contemplate that the expansion may not occur[11] and that Plaintiffs may be terminated for due cause.[12]  The plain language of the contracts defeats Plaintiffs' allegations of fraud and negligent misrepresentation.  Therefore, the Court grants summary judgment on those claims.

CONCLUSION

Defendants' motions for summary judgment [Docs. 45 & 46] are granted in part and denied in part.  Defendants' Motion to Strike [Doc. 62] is denied.  The following claims remain pending for trial: (1) Plaintiffs' federal ADEA claims against Progressive; (2) Plaintiffs' breach of employment contract claims against Progressive based upon Progressive's alleged termination of Plaintiffs' employment without "due cause;" and (3) Mr. Morris's vehicle allowance claim against Progressive.

---

[11]The stock purchase agreement provides that "*[i]f no clinic is opened in the [Protected Geographic Territory] within three years of the date of this transaction, and, neither Warren nor Debra Morris is employed by the Purchaser, the rights to the Protected Geographic Territory shall expire at such time.*"  (D. Morris Dep., Ex. 3, 3 ¶ 6 (emphasis added).)

[12]The employment agreements state that "[the] Agreement is not intended to be, nor shall it be construed as, giving [Plaintiff] any right to be retained in the employ of the Company.  [Plaintiff] agrees that her employment is subject to termination by the Company at any time with Due Cause." (D. Morris Dep., Ex. 6, 1 ¶ 1; W. Morris Dep., Ex. 6, 1 ¶ 1.)

IT IS SO ORDERED, this 21st day of March, 2007.


                                    S/Clay D. Land
                                      CLAY D. LAND
                                UNITED STATES DISTRICT JUDGE